ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Plaintiff,

v.

PEPSICO, INC., Defendant.

PEPSICO, INC., Third–Party Plaintiff,

v.

BANNER INDUSTRIES, INC., Third–Party Defendant.

No. 85 Civ. 2276 (KTD).

United States District Court, S.D. New York.

March 24, 1995.

Hart & Hume, New York City, for plaintiff (Mark S. Gamell, of counsel).

Friedman, Wang & Bleiberg, P.C., New York City, for defendant (Laurie R. Josephs, of counsel).

## MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge:

This Memorandum & Order is being reluctantly filed. Unfortunately, the history of this case shows malfeasance on the part of the Plaintiff insurance company—perhaps sufficient to have their license to continue in the insurance business questioned and/or suspended in a number of states. Counsel for Plaintiff is fully aware of this, yet demands that I comply with an order of the Court of Appeals detailing the reasons for my dismissal of the complaint herein many years ago.

After having the Circuit Court file an order requesting "sufficient clarification of the basis for the judgment as will permit appellate review," I suggested to counsel for both parties what the impact of such an egregious breach of duty might be. Plaintiff's counsel, who was not even involved with the case at relevant times, insisted, and continues to so insist, that my determination was based on "mootness." By not delineating the true facts and basis for my decision, counsel illustrates its obvious concern for tactical advantage rather than the truth. Accordingly, I must undertake to make the following findings and conclusions.

Plaintiff St. Paul Fire & Marine Insurance Company ("St. Paul") brought this action after a dispute arose over the handling of its bond obligations. Plaintiff acted as an insurance carrier for Lee Way Motor Freight, Inc. ("Lee Way"), a former subsidiary of Defendant. In this capacity, Plaintiff posted bonds as security for various obligations of Lee Way.

In 1978, Plaintiff and Defendant entered into an indemnification agreement in which Defendant agreed to indemnify Plaintiff for any losses it incurred as a result of its posting bonds for Lee Way. In 1984, Defendant sold Lee Way. The following year, Lee Way began defaulting on its obligations, triggering Plaintiff's surety obligation. A dispute arose between the parties regarding what amount, if any, Plaintiff should tender to the claimants. In October 1985, I signed an order (the "October Order") requiring Plaintiff to continue fulfilling its obligations under the surety bonds and to act "reasonably and in good faith in administering, defending and settling" any claims to the bonds posted by Plaintiff. Defendant was required to reimburse Plaintiff for all expenses "reasonably and in good faith incurred by [Defendant] in administering, defending and/or settling claims."

For several years, both parties performed under the October Order without incident. Plaintiff expended money in administering, defending and settling claims, and Defendant reimbursed it for said expenses. In 1989, a dispute arose between the parties over the handling of a particular claim. Plaintiff had paid an amount to settle a claim, but Defendant refused to reimburse Plaintiff, claiming that it did not believe the expenditure to have been "reasonable and in good faith." By letter dated April 7, 1989, Defendant informed Plaintiff that it had hired a claims expert company to analyze the claims and that it had learned that Plaintiff not only failed to represent Defendant's interest at claims hearings, but also failed to ask for notice of the hearings so that representation could be obtained. The claims expert calculated the amount of losses that could have been avoided had St. Paul abided by the October Order and reasonably administered and defended the claims. Plaintiff neglected to respond or refute Defendant's conclusions. In May 1989, I held a conference and concluded that Defendant did not owe Plaintiff any reimbursement on the bonds issued by Plaintiff on behalf of Lee Way.

In a letter dated June 28, 1989, Plaintiff's new counsel sought to address the issues which had been raised in April and decided in May 1989. Plaintiff admitted that it did not defend the claims and suggested for the first time that it was not obligated under the October Order to defend those claims. In September 1990, Plaintiff's counsel further

suggested that the case had been "inadvertently closed" and requested a conference. At the ensuing conference, Plaintiff's counsel refused to accept that I had ruled that Defendant owed nothing to Plaintiff. I ordered Plaintiff's former counsel to be deposed for his recollection of the May 1989 conference. Plaintiff's former counsel had taken notes at the May conference which reflected my ruling correctly. I held one final conference in September 1991, in which I reviewed with the parties what had transpired. I dismissed the case because of Plaintiff's failure to comply with the October Order and satisfy its obligations to Defendant.

Plaintiff had an obligation to Defendant to reasonably and in good faith defend all claims under which Defendant's subsidiary became liable. By its own admission, Plaintiff defaulted on this duty, claiming it was not so obligated. Plaintiff blindly paid on bonds without investigating or defending claims and, therefore, did not act reasonably and in good faith. Further, Plaintiff misled this court and the Second Circuit in an attempt to thwart the consequences of prior proceedings.

As a direct result of Plaintiff's misdeeds and neglect, this case was dismissed on the merits on September 20, 1991, with costs. This Memorandum & Order is filed solely to clarify for the Second Circuit the reasons for the dismissal of Plaintiff's claims.

SO ORDERED.